IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL LOVE,<br><br>        Plaintiff,<br><br>    v.<br><br>O'REILLY AUTO ENTERPRISES, LLC,<br><br>        Defendant. | Case No. 19-cv-04005-CRB<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

This dispute arises out of a June 2019 incident in which Plaintiff Samuel Love ("Love"), a paraplegic who uses a wheelchair for mobility, made a purchase at Defendant O'Reilly Auto Parts Store ("O'Reilly"). See Love MSJ at 1–2 (dkt. 30-1). Love contends that O'Reilly violated the Americans With Disabilities Act ("ADA") and analogous California Unruh Civil Rights Act provisions by refusing to assist him at the lowered sales counter and failing to maintain the lowered counter in a usable manner. See id. at 2, 4, 9. In this motion for summary judgment, Love argues that there is no genuine dispute as to any material fact. Id. at 4. As explained below, the Court disagrees, and therefore DENIES Love's motion for summary judgment.

## I.  BACKGROUND

### A.  Factual Background

Love is a California resident with physical disabilities who uses a wheelchair for mobility. See Love Decl. (dkt. 30-2) ¶ 2; Ex. 1 Love Depo. (dkt. 42-2) at 10:17–10:24. In June 2019, Love visited an O'Reilly Auto Parts store in San Mateo, California. Love Decl. ¶ 3, Ex. 2 Receipt (dkt. 30-3). The O'Reilly Auto Parts store has a lowered sales counter

for transactions involving customers with disabilities.  See Love Decl. ¶ 5.  During his visit, Love asked to be helped at the lowered counter in another area of the store, but the employee denied Love's request.[1]  See Love Decl. ¶ 5.  The employee declined to accommodate Love because the lowered counter was not usable at the time.[2]  See id.; see also Sanabria Decl. (dkt. 31-1) ¶ 4.  Because the employee would not assist Love at the lowered sales counter, Love had to conduct his transaction at the higher sales counter, which was not accessible to him, and caused much "difficulty and discomfort."  Love Decl. ¶ 6.  Love plans to return to the store "to assess the Store for compliance with disability access laws and confirm that the lowered counter is being maintained in a usable manner."  Id. ¶ 7.

After Love's visit on June 4, 2019, investigator Corey Taylor visited the store on June 28, 2019, where he found the sales counter measured approximately 41.5 inches high and observed that the lowered counter "was crowded with boxes and inventory."  Taylor Decl. (dkt. 30-4) ¶¶ 3–5, Ex. 4 Photos by Taylor (dkt. 30-5).  Taylor also did not see any customers being helped at the lowered counter.  Taylor Decl. ¶ 5.

### B.     Procedural Background

Love brought suit on July 12, 2019, under the ADA and the Unruh Civil Rights Act.  See generally Compl. (dkt. 1).  O'Reilly moved for judgment on the pleadings, or in the alternative, summary judgment.  See generally O'Reilly MJP (dkt. 28).  Concurrently, Love moved for summary judgment, see generally Love MSJ, which O'Reilly opposed, arguing that (1) Love's motion is premature; (2) Love's sole theory of liability fails to state a claim as a matter of law; (3) Love lacks standing; and (4) there are genuine disputes of material fact, see generally O'Reilly Opp'n (dkt. 31).  The Court denied O'Reilly's motions and ordered O'Reilly to show cause as to its prematurity argument.  See generally

---

1. O'Reilly disputes that Love requested assistance at the lowered counter and that the employee refused.  See O'Reilly Opp'n at 6.
2. Love asserts that the accessible dounter was unusable because there were miscellaneous items and merchandise placed on top of the lowered counter, see Love Decl. ¶ 5, while O'Reilly asserts that "due to a temporary malfunction, the point of sale terminal at the accessible counter was unavailable."  Sanabria Decl. ¶ 4.

1  Order Denying O'Reilly Mots. (dkt. 38); Order to Show Cause (dkt. 39).  After O'Reilly
2  filed a declaration about prematurity that satisfied Rule 56(d), see generally Gonnella Decl.
3  (dkt. 40), the Court permitted O'Reilly to take discovery, see generally Order Permitting
4  Discovery (dkt. 41).  O'Reilly then filed an updated opposition, which maintains that Love
5  lacks standing and that there are genuine disputes of material fact regarding the substantive
6  allegations.  See generally O'Reilly Supp. Opp'n (dkt. 42).  Love filed an updated reply.
7  See generally Love Supp. Reply (dkt. 43).

## II.   LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of material fact is genuine if the evidence, viewed in the light most favorable to the nonmoving party, "is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party moving for summary judgment bears the initial burden of identifying those portions of the evidence that demonstrate the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof at trial, that party must affirmatively show that no reasonable jury could find other than in the moving party's favor.  Id. at 331 (Brennan, J., dissenting).

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and show that there is a genuine issue for trial.  See Anderson, 477 U.S. at 250.  The nonmoving party does this by citing to specific parts of the materials in the record or by showing that the materials cited by the moving party do not compel a judgment in the moving party's favor.  Fed. R. Civ. P. 56(c).  A triable dispute of material fact exists only if there is sufficient evidence favoring the nonmoving party to allow a jury to return a verdict for that party.  See Anderson, 477 U.S. at 249.  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law."  Celotex, 477 U.S. at 323.

### III. DISCUSSION

To prevail on an ADA Title III discrimination claim, a plaintiff must show that: (1) he is disabled; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the defendant denied the plaintiff public accommodations because of his disability. See Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007) (citing 42 U.S.C. §§ 12182(a)–(b)). Further, public accommodations have a statutory duty to ensure that the required accessible features are maintained in a useable condition. See 28 C.F.R. § 36.211(a). Neither party disputes that Love is disabled or that O'Reilly owns and operates a place of public accommodation. See generally Love MSJ; O'Reilly Opp'n. Therefore, the only elements in dispute are whether O'Reilly denied Love public accommodations because of his disability and whether O'Reilly failed to maintain the accessible counter in a usable condition.

Love contends that O'Reilly failed to make necessary, reasonable modifications to its policies, practices, or procedures to accommodate him and that O'Reilly failed to maintain the lowered counter in a useable manner that was accessible to people with disabilities. See Love MSJ at 4, 9. O'Reilly makes a number of arguments in opposition that the Court has not yet addressed, including that (A) Love lacks standing, and (B) there are genuine disputes of material fact. See O'Reilly Opp'n at 3, 6–8. See generally Order Denying O'Reilly Mots. The Court addresses each in turn.

#### A.  Love Has Standing

As an ADA plaintiff, Love "can establish standing to sue for injunctive relief . . . by demonstrating injury-in-fact coupled with an intent to return to a noncompliant facility," thereby establishing a future "real and immediate threat of repeated injury." Chapman v. Pier 1 Imports, 631 F.3d 939, 944, 946 (9th Cir. 2011). "Where 'the public accommodation being sued is far from the plaintiff's home,' a plaintiff shows 'actual or imminent injury sufficient to establish standing' when he or she 'demonstrates an intent to return to the geographic area where the accommodation is located and a desire to visit the accommodation if it were made accessible.'" Feezor v. Sears, Roebuck and Co.,

4

608 F. App'x 476, 477 (quoting D'Lil v. Best W. Encina Lodge & Suites, 538 F.3d 1031, 1037 (9th Cir.2008)). However, "'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding" of actual or imminent injury. Lujan v. Defs. of Wildlife, 504 U.S. 555, 564 (1992).

Love asserts that he "visit[s] San Mateo County on a regular basis," and that he "plan[s] to visit the Store again to shop whenever [he] is in the area and the need arises." Love Decl. ¶¶ 7–8. O'Reilly argues that Love lacks standing to bring this action because Love's injury-in-fact is not coupled with the "required 'concrete' plan to return" to the noncompliant facility.[3] See O'Reilly Opp'n at 3.

However, having a concrete intent to return is not the only way for an ADA plaintiff to establish standing. The Ninth Circuit has held that an ADA plaintiff can also claim "tester standing," which permits a plaintiff whose "only motivation for visiting a facility is to test it for ADA compliance" to assert standing. Civ. Rights Educ., 867 F.3d at 1096, 1101. Love asserts that he "will return to assess the Store for compliance with disability access laws." Love Decl. ¶¶ 7–8. Love "had dual motives for his first visit and for his intent to return" to the O'Reilly store. Love Reply (dkt. 34) at 5. Even if Love's only motivation for visiting O'Reilly was to test it for ADA compliance, "motivation is irrelevant to the question of standing under Title III of the ADA." Civ. Rights Educ., 867 F.3d at 1102. Thus, Love has established Article III standing by sufficiently claiming "tester standing." Id. at 1101.

### B. Genuine Disputes of Material Fact

A moving party can satisfy his burden of establishing the absence of a genuine issue of material fact by (1) presenting evidence that negates an essential element of the nonmoving party's case, or (2) demonstrating the nonmoving party failed to establish an

---

3. O'Reilly emphasizes that Love has no specific plan to return to San Mateo, O'Reilly Supp. Opp'n at 3, based on his answers to a deposition question that began with "[A]ssume for a second that there is no coronavirus and it's completely safe for coronavirus reasons . . . ." O'Reilly Supp. Opp'n Ex 1. at 29:14–31:4.

1  essential element of the nonmoving party's case on which the nonmoving party bears the
2  burden of proving at trial. Celotex, 477 U.S. at 322–23. Once Love carries this initial
3  burden, the burden of production shifts to O'Reilly to set forth facts showing a genuine
4  issue of disputed fact. See id. at 330.
5  　　　The Court first addresses whether Love satisfied his initial burden, and then
6  whether O'Reilly set forth facts showing a genuine issue of disputed fact.

### 1. Love Satisfied His Initial Burden

O'Reilly maintains that Love has failed to carry his initial burden because he did not establish an O'Reilly policy that is not ADA compliant, nor did he establish that O'Reilly's practice or procedures is inconsistent with its policy. See O'Reilly Opp'n at 5–6. However, Love submitted declarations showing that an O'Reilly employee declined to accommodate him at the lowered counter and that, on more than one occasion, O'Reilly did not maintain the otherwise ADA-compliant lowered counter in an accessible manner. See Love Decl. ¶¶ 3, 5; see also Taylor Decl. ¶¶ 3, 5–6, Ex. 4. This evidence of O'Reilly's intermittent application of ADA compliance satisfies Love's initial burden. See Fortyune v. Am. Multi-Cinema, 364 F.3d 1075, 1082 (9th Cir. 2004) (internal citations omitted). In its supplemental opposition, O'Reilly challenges Love's contention that O'Reilly does not maintain the counter, pointing to Love's inability to state exactly what miscellaneous items were on the counter. See O'Reilly Supp. Opp'n at 4–5. As Love points out, it is not clear why recalling the specific merchandise on the lowered counter is relevant. See Love Supp. Reply at 6.

Love has therefore satisfied his initial burden, and the Court proceeds to its review of whether O'Reilly produced sufficient evidence showing a genuine issue of material fact.

### 2. There Are Genuine Disputes of Material Fact

First, the Court addresses alleged disputes of material fact that are actually questions of law, that are not in dispute, and that are not material. Second, the Court considers Love's objection to a declaration filed in support of O'Reilly's opposition. Third, the Court analyzes whether O'Reilly identified genuine disputes of material facts.

### a. Questions of Law, Facts Not in Dispute, and Immaterial Facts

Some of O'Reilly's claimed disputes of material fact are actually questions of law, including (1) whether O'Reilly "needs to modify its polices, practices and procedures [to] comply with the ADA," and (2) whether O'Reilly discriminated against Love. O'Reilly Opp'n at 7–8; see also Pullman-Standard v. Swint, 456 U.S. 273, 288 (1982) (noting "the vexing nature of the distinction between questions of fact and questions of law"). While they might both hinge on disputed questions of fact (as discussed below), both are questions of law. Accordingly, they do not establish a genuine issue of material fact and are not relevant to the present summary judgment inquiry.

Another alleged dispute is not actually in dispute. O'Reilly contends that the sales counter was not too high, and the store has an accessible counter that complies with ADA height requirements. O'Reilly Opp'n at 6. Love does not dispute the existence of a lowered, ADA-compliant counter. Love MSJ at 7 ("There is no dispute that a physically compliant, lowered sales counter existed at the Store on the date of Plaintiff's visit."); see also Compl. ¶¶ 10–11.

And one claimed dispute is not material to the outcome of the case. O'Reilly argues that the lowered counter is not located in another area of the store. O'Reilly Opp'n at 7 (citing Sanabra Decl. ¶ 3). While this fact is in dispute, see Love MSJ at 2 (citing Love Decl. ¶5); Taylor Decl. ¶ 5, it is not material. "A fact is material if it could affect the outcome of the suit under the governing substantive law." Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 987 (9th Cir. 2006) (citing Anderson, 477 U.S. at 256). The location of the lowered counter does not impact whether O'Reilly maintained it in a useable manner, nor does it impact whether O'Reilly failed to reasonably modify its policies, practices, or procedures to accommodate Love. See id.

### b. Love's Objection to the Sanabria Declaration

Many of O'Reilly's disputed material facts rely on the declaration of O'Reilly's Store Manager, Glenda Sanabria. See O'Reilly Opp'n at 7–9; see generally Sanabria Decl.

One paragraph in her declaration contains assertions about the lowered counter's point of sale terminal functionality; Sanabria explains that she "was not working at the San Mateo Store on June 4, 2019," and that her allegations are "made on information and belief based upon review of the relevant business records." Sanabria Decl. ¶ 4. Love objects to this paragraph, arguing that the declaration "fails to authenticate the facts necessary under the 'business records' exception to the rule against hearsay." See Love Objection (dkt. 35) at 1–2. However, "the evidence presented at the summary judgment stage does not yet need to be in a form that would be admissible at trial"; rather, O'Reilly must set out facts that it will be able to prove through admissible evidence. See Norse v. City of Santa Cruz, 629 F.3d 966, 973 (9th Cir. 2010).

Notably, Love's objection does not argue that Sanabria cannot authenticate the business records. See Love Objection at 2; see also Jimenez v. Allstate Ins. Co., No. CV 10-8486 AHM FFM, 2011 WL 65764, at *2 (C.D. Cal. Jan. 7, 2011) (holding that there is no need to provide actual business records on a motion for summary judgment when the defendant's employee declared she based her knowledge on "her personal review of . . . business records"). The Court need not decide at this stage whether the records themselves will be admissible at trial because the content within them (upon which Sanabria bases her assertions) could nevertheless be admitted into evidence in a variety of ways.[4] See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents."); see also Fed. R. Civ. P. 56(c)(2).

Accordingly, the Court denies Love's objection to the declaration.

### c. O'Reilly's Disputed Material Facts

The Court now (i) considers O'Reilly's insufficiently supported disputes of material fact, and (ii) identifies the sufficiently supported, genuine disputes of material facts.

---

[4] For example, Sanabria could testify to authenticate these business records or to her knowledge based on her normal business responsibilities, which include reviewing the records.

### i. Insufficiently Supported Factual Disputes

O'Reilly disagrees with Love's assertions that he requested to use the lowered counter and that the employee refused this assistance at the lowered counter. O'Reilly Opp'n at 6. O'Reilly also challenges Love's contention that the accessible counter is not maintained in a usable condition. O'Reilly Opp'n at 9. However, O'Reilly does not produce any "specific facts" to give rise to a genuine dispute. See Anderson, 477 U.S. at 256; see also Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007) ("Bald assertions that genuine issues of material facts exist are insufficient."). Instead, O'Reilly points to its policy to "comply with the ADA and to train store team members to ensure they are knowledgeable regarding ADA compliance accessibility." O'Reilly Opp'n at 6, 9 (citing Freeman Decl. (dkt. 28-5) ¶¶ 3–6; Sanabria Decl. ¶2). The Ninth Circuit held in Chapman v. Pier 1 Imports that the mere existence of certain policies did not establish ADA compliance. See 779 F.3d 1001, 1008 (9th Cir. 2015). Rather, Love's evidence "demonstrates that these policies and procedures were either ineffective" or "honored in the breach." See id.

Similarly, O'Reilly challenges whether Love asked O'Reilly "to modify its policy." O'Reilly Opp'n at 7. O'Reilly's original opposition argued that Love's motion for summary judgment was premature, so O'Reilly was unable to present essential facts to adequately dispute this assertion. O'Reilly Opp'n at 7–8. However, even after the Court permitted discovery, O'Reilly has failed to produce any "specific facts" suggesting a genuine dispute here. See Anderson, 477 U.S. at 256. See generally O'Reilly Supp. Opp'n.

### ii. Sufficiently Supported Disputes of Material Fact

O'Reilly argues that there are genuine disputes of material fact over whether "the alleged ADA violation was a temporary interruption," whether Love's requested modification was reasonable, and, to the extent that it implies a practice or policy of refusing service to customers with disabilities, whether "other customers have been helped at the lowered counter." O'Reilly Opp'n at 7–9. The Court agrees.

9

O'Reilly asserts that the reason its employee did not assist Love at the lowered counter on June 4, 2019 was due to "a temporary malfunction" of the point of sale terminal that made the accessible counter "unavailable." Id. (citing Sanabria Decl. ¶ 4). In contrast, Love contends that the accessible counter's unavailability was not a temporary interruption, but due to a policy, practice, or procedure to refuse assistance at the lowered counter and because the counter was not maintained in a usable manner. See, e.g., Love MSJ at 7, 9. Because the ADA "does not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs," this issue would affect the outcome of the suit and is therefore material. 28 C.F.R. § 36.211(b); see also Anderson, 477 U.S. at 248. And as discussed above, this dispute is genuine because, given the assertions in the Sanabria Declaration, a reasonable jury could return a verdict in O'Reilly's favor. See Anderson, 477 U.S. at 248.

O'Reilly also argues that Love's requested modification was unreasonable because "it was factually impossible to assist customers at the Store's accessible counter due to a temporary malfunction." O'Reilly Opp'n at 8 (citing Sanabria Decl. ¶ 4). Love, on the other hand, asserts that because an accessible counter already existed at the store, "it is reasonable for disabled persons . . . to be assisted at the lowered counter when requested." Love MSJ at 8. The determination of whether a modification is reasonable "involves a fact-specific, case-by-case inquiry." Fortyune, 364 F.3d at 1083 (quoting Staron v. McDonald's Corp., 51 F.3d 353, 356 (2d Cir.1995)). Because this factual dispute is germane to the ADA Title III discrimination inquiry, the issue is material and genuine. See Fortyune, 364 F.3d at 1082–84; Anderson, 477 U.S. at 248.

Finally, O'Reilly alleges that customers are "regularly assisted at the Store's accessible counter," Sanabria Decl. ¶ 3, which arguably contradicts Love's showing that on two separate occasions customers were not assisted at that counter. See Love Decl. ¶ 5; see also Taylor Decl. ¶ 5. This dispute is likewise material because, if other customers are indeed regularly assisted at the lowered counter, that would undermine Love's contentions that O'Reilly has a practice of refusing access to the lowered counter even when patrons

explicitly ask and that O'Reilly "regularly used the counter to store merchandise and displays, rather than to assist customers" in an ADA-compliant manner. Love Opp'n (dkt. 32) at 5; see Anderson, 477 U.S. at 248. The issue is also genuine because a jury could reasonably return a verdict for O'Reilly given the evidence. See Anderson, 477 U.S. at 248.

IV. **CONCLUSION**

Because there are genuine issues of material fact, the Court DENIES Love's motion for summary judgment.

**IT IS SO ORDERED.**

Dated: August 3, 2020



CHARLES R. BREYER

United States District Judge